Burks, J.,
delivered the opinion of the court.
The plaintiff' in the court below (defendant in error here) was run over by a train of cars of the Richmond and Danville Railroad Company. His arm was badly crushed, and was amputated, and he was otherwise injured. He brought his action against the company for damages, alleging that' the injury was caused by the company’s negligence. On the trial of the issue joined on the plea of not guilty the jury gave the plaintiff' a verdict and assessed his damages at $1,500. The defendant made a motion for a new trial on the ground that the verdict was contrary to the evidence. The motion was overruled, and the defendant excepted. The bill of exceiitions taken contains a certificate of the facts proved on the trial. The case is before us on a writ of error awarded the defendant to the judgment rendered on the verdict in behalf of the plaintiff.
Two questions are presented for decision: Dirst, whether the injury complained of was caused by the negligence of the defendant; and, secondly, if so, whether it was caused solely by such negligence, or by the negligence of the plaintiff concurring with that of the defendant; in other words, whether there was contributory negligence on the part of the plaintiff
*203 Tlie reports are filled with cases expounding and illustrating the doctrine of contributory negligence, and there is more or less conflict in the decisions, der the diversity of circumstances in the cases. Attempt to reconcile them would he labor to no useful purpose. "We shall make no such attempt. We think the law on the subject applicable to such a state of facts as we now have to deal with is correctly laid down by the supreme court of the United States in the recent case of Railroad Co. v. Jones, 95 U. S. R. (5 Otto) 439.
Mr. Justice Swayne, in the opinion of the comt delivered by him, said: “ One who by his negligence has brought an injury upon himself cannot recover damages for it. Such is the rule of the civil and common law. A plaintiff in such cases is entitled to no relief. But where the defendant has been guilty of negligence also, in the same connection, the result depends on the facts. The question in such cases is: 1. Whether damage was occasioned entirely by the negligence or improper conduct of the defendant; or, 2. Whether the plaintiff himself so far contributed to the misfortune by his own negligence or want of ordinary care and caution that hut for such negligence or want of ordinary care and caution on his part the misfortune would not have happened.”
In the former case the plaintiff is entitled to recover. In the latter he is not. The authorities cited by the learned justice fully sustain the propositions laid down in the opinion.
One being in default, says Lord Ellenborough, will not dispense with using ordinai-y care for himself. Butterfield v. Forrester, 11 East, 60. If by ordinary care, says Baron Parke, in another case, he (the plaintiff) might have avoided them (the consequences of the defendant’s negligence), he is the author of his *204 own wrong. Bridge v. Grand Junction Railway Co., 3 Mees. & Welsby R. 244.
Authorities to the same effect are numerous. One other only besides our own decisions will be referred to. In Railroad Co. v. Aspell, 23 Penn. St. 147, 149, Chief Justice Black delivering the opinion of the court, stated the law thus in its application to railroad companies: “Persons to whom the management of a railroad is intrusted, are bound to exercise the strictest vigilance. They must carry the passengers to their respective places of destination and set them down safely, if human care and foresight can do it. They are responsible for every injury caused by defects in the road, the cars, or the engines, or by any species of negligence, however slight, which they or their agents may be guilty of. .But they are answerable only for the direct and immediate consequences of errors committed by themselves. They are not insurers against the perils to which a passenger may expose himself by his own rashness of folly. One who inflicts a wound upon his own body must abide the suffering and the loss whether he does it in or out of a railroad car. It has been a rule of law from time immemorial, and is not likely to be changed in all time to come, that there can be no recovery for an injury caused by the mutual fault of both parties. When it can be shown that it would not have happened except for the culpable negligence of the party injured concurring with that of the other party, no action can be maintained. A railroad company is not liable for an accident which the passenger might have prevented by ordinary attention to his safety, even though the agents in the train are also remiss in their duty.” •
The principles of these decisions are applied in two cases—Baltimore & Ohio Railroad Co. v. Sherman’s adm’x, and same (plaintiff) v. Whittington’s adm’r, 30 Gratt. *205 pp. 602, 805—decided by this court during the last term at Staunton.
The following are the facts of this case as far as need be stated.
On the 17th day of March, 1878, the plaintiff' purchased a ticket from an agent of the defendant at a station on the road called “Wolf Trap, in Halifax county, for South Boston, another station in said county, and took passage for his place of destination in a caboose (car), which was attached to a freight train for the purpose of carrying passengers. It does not appear distinctly whether it ivas in the night time or day when he entered the caboose. It is to be inferred, however, that it ivas in the night, as it was proved that it was late in the evening when he went to the station, and, as the. passenger train had already passed, he had to wait some time for the freight train, which was behind time. This train reached South Boston at 11 o’clock in the night. The distance between the two stations ivas not proved. Soon after the plaintiff' entered the caboose he fell asleep. After the train had left "Wolf Trap station the conductor waked the plaintiff and took his ticket. "When the train reached the sivitch nearing South Boston the conductor,finding the plaintiff again asleep, aAvoke him a second time and told him he Avas at Boston. The train Avas then travelling at the rate of four miles per hour. It passed the freight-house and reception-room at the station without stopping, and AAdien the locomotiA-e reached the frog on the Avest side of the freight-house and reception-room it stopped, and the conductor, seeing the plaintiff still in the caboose asleep, again aroused him. The train stopped about a minute, and the plaintiff’ could ha\Te gotten off Avhile the train was not in motion. The conductor then went to the other end of the car, and, looking back, saw that the *206 plaintiff did not get up. He returned, shook him, and told him to get up, he was at Boston. The plaintiff says he told him to get off". Immediately after the waking of the plaintiff the last time the conductor went out at the end of the caboose with his lantern in his hand and took his stand on the stationary platform about two and a half feet from the platform of the car; the train commenced backing, and the plaintiff got up and walked out to the end of the car and jumped off, not knowing, as he says, which way the car was going, and the caboose car and several other cars passed over him, inflicting the injuries before mentioned. The point at which the plaintiff jumped off was opposite the platform, which extended about thirty-five steps west and a much greater distance east of the pump-house, and was that part of the platform at which passengers going east usually get off. The entire platform was in good condition. There was no chain across the end of the platform in rear 'of the caboose, and it was not customary to have chains across the platforms of such cars. It was a dark, drizzly night. The only lights at the station were two lanterns: one in the hands of the conductor and the other in the hands, of a servant of the defendant employed at the station. The train reached the station behind time.
It was proved that when the plaintiff took the train at Wolf Trap he was under the influence of liquor, but it does not appear that this fact was known to the conductor. When discovered, immediately after the train passed over him, he was perfectly sober.
These facts, in our opinion, show the defendant to have been guilty of culpable negligence, and this negligence was a proximate cause of the plaintiff’s injury. After the conductor discovered that the plaintiff when aroused did not get off while the train was standing *207 for a very short period, but had again “fallen asleep,- and he found it necessary to wake him again, he should not have put the train in motion until plaintiff could leave the car, or if put in motion, he should have cautioned him not to attempt to get off until the train was stopped.- Instead of pursuing that course, the proof is that he told the plaintiff to get off, and the train immediately commenced backing, at what speed was not shown.
The company was also in fault in not having stationary lights. There were none such, and the only lights used were the two hand-lanterns before mentioned. This defect made it all the more incumbent on the conductor to exercise more than usual care and caution in letting off’ passenger’s.
While, however, the injury sustained by the plaintiff is directly traceable to the culpable negligence of the defendant as a cause, the evidence leaves no room for doubt that another cause, concurring with the first, was the negligence or absence of ordinary prudence and caution on the part of the plaintiff. He had time sufficient, according to the proof, to leave the car while the train was standing; and after he was cautioned the last time, if he had at once followed the conductor, wdio stepped on to the'platform with the lantern in his hand, he might have reached the platform with equal convenience and safety; or if tarrying longer and finding the train In motion, when told to get off, he should either have declined, as he had the right to do, to obey the direction, or if he chose to take the risk of getting off under the,circumstances, he should have gotten off on the stationary platform, which, as shown, was alongside of the train. Such would have been the dictates of common prudence. He did not heed them, but according to his own statement, he got up, walked to *208 the end of the car and “jumped off,” not knowing nor seeking to know in which direction the train was. This would seem to be something more than the want of ordinary prudence and caution. It appears Sross negligence—extreme recklessness.
In what we have said we have treated the certificate of the circuit judge as a certificate of the facts in the case. It is sometimes difficult to determine whether the certificate in a bill of exceptions is one of facts or of evidence. The certificate in this record purports to be the facts, and we think that is its true character. What each witness stated is certified as facts “proved” by that witness, and there seems to be no essential conflict in the statements. The statements of some are fuller than those of others, but they do not appear to be in conflict with each other. This is in effect to certify that the evidence is true, and substantially the facts proved by the evidence. Gimmi v. Cullen, 20 Gratt. 489, 455.
If, however, the certificate is of the evidence only, and the rule as laid down in Read’s Case, 22 Gratt. 924, 925, be applied, rejecting all the parol evidence of the plaintiff’ in error and giving full faith and credit to that of the defendant in error, this would still-be a case for reversal of the judgment. The case, as to the question of negligence, would then rest solely on the statement of the defendant in error himself. That statement need only be read to show that, it makes a case against him.
He testified that “ on the arrival of the freight train (at Wolf Trap) the agent told him to take his seat in the caboose attached to the freight train for the purpose of conducting passengers; that he did so, and being wearied from his day’s work he soon feel asleep; that while at .Wolf Trap he purchased a pint of whiskey for one of his hands, but did not buy any whiskey *209 for himself, or take any unless it ivas when he bought that for his hand; that he was at Wolf Trap about an hour; that after the train left Wolf Trap he waked up by the conductor, who called for his ticket; he produced his ticket, and then fell asleep again, and did not remember anything more until he ivas waked up again at South Boston by the conductor, who told him he was at South Boston and to get off; that he got up and walked out to the end of the car and jumped off; that he did not know which way the car was going, and that the car caught him, ran over him, and after that that the misery ivas so great he did not know what took place; that he ivas injured, and disabled for about three months from the injury; that his right arm had to be amputated, and that he has a wife and three children.
The Railroad Co. v. Aspell, supra, Avas a case in Avliich a passenger, being carried beyond the station whore he intended to stop, jumped from the train Avhilo it Avas in motion, and for the injury reeei\'od thereby sued the railroad company for damages. Chief Justice Black, after using the language already quoted, makes the following obseiwations, Avith Avliich avo conclude this opinion: “From these principles it folloAvs very clearly that if a passenger is negligently carried beyond the station AAdiere he intended to stop, andAA'here he had the right to be let off, he can recover compensation for the inconvenience, the loss of time, and the labor of travelling back; because these are the direct consequences of the wrong done to him. But if he is foolhardy enough to jump off without waiting for the train to stop, he does it at his oavii risk; because this is gross negligence, for which he can blame nobody but himself. If there be any man* who does not know that such leaps are dangerous, especially when *210 taken in the dark, his friends should see that he does not travel on a railroad.”
It is to he borne in mind, however, that if a passenger is induced to leap from the carriage, whether by coach or railway, by a well founded apprehension of peril to life or limb induced by occurrences which might have been guarded against by the utmost care of the carriers, he is entitled to recover for any injury he may sustain thereby, although no injury would have occurred if he had remained quiet. Redfield on Railways, § 178 et seq. and cases cited in notes ; Sherman & Red-field on Regligence, § 28. In this case there was no such peril and no apprehension of any.
The court is therefore of opinion that the judgment of the circuit court is erroneous and should be reversed and annulled, the verdict of the jury set aside, and the cause remanded for a new trial.
The judgment was as follows:
This day came again the parties by their counsel, and the court having maturely considered the transcript of the record of the judgment aforesaid and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the said circuit court erred in overruling the motion of the plaintiff in error (defendant in said circuit court) to set aside the verdict of the jury and award a new trial of the issue joined between the parties. It is therefore considered and ordered that for the error aforesaid the said judgment be reversed and annulled, and that the defendant in error pay to the plaintiff in error its costs by it expended in the prosecution of the writ of‘ error aforesaid here; and this court now proceeding to render such judgment as the said circuit court should have rendered, it is further con *211 siclered and ordered that the verdict of the jury be set aside, and a new trial be had of the issue joined in this cause. And this cause is remanded to the said circuit court for a new trial of the issue in the cause, as herein ordered, and for further proceedings, in order to final judgment; which is ordered to be certified to the said circuit court of Halifax county.
Judgment reversed.